UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23210-CIV-MOORE/SIMONTON

FISK ELECTRIC COMPANY,

    Plaintiff,

vs.

TRAVELERS CASUALTY AND
SURETY COMPANY,

    Defendant.
_____/

**ORDER DENYING DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S MOTION TO DISMISS AND MOTION TO STRIKE COUNT III**

THIS CAUSE came before the Court upon Defendant Travelers Casualty and Surety Company's Motion to Dismiss Plaintiff's Complaint and Motion to Dismiss or Strike Count III (dkt # 8).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This action concerns a subcontractor's claim for payment against a surety payment bond. In 2001, Miami Dade County ("Miami-Dade") undertook the South Terminal Expansion Program, consisting of four projects including (1) the H-J Project, (2) the South Terminal Building, (3) Concourse J, and (4) Concourse H.[1] Parsons-Odebrecht Joint Venture ("POJV") was the agent and construction manager for the South Terminal Expansion Program. On December 12, 2002, Kiewit Southern Company ("Kiewit") entered into an agreement with POJV to act as the contractor for the

---

[1] The facts here are taken from the Complaint (dkt # 1).

H-J Project. The next day, Kiewit entered into a subcontract with Plaintiff Fisk Electric Company ("Fisk") to install underground duct banks and feeders, perimeter fence lighting, emergency fuel shut off, leak detection systems, permanent airfield lighting systems, and to provide and maintain the temporary lighting for the airside operations for the H-J Project. In connection with the H-J Project, Kiewit, as principal, and Travelers Casualty and Surety Company ("Travelers"), as surety, executed a surety payment bond[2] (the "Kiewit Payment Bond") for the H-J Project and delivered it to POJV, as obligee.

Fisk alleges that during the course of its subcontracting obligations, there were thousands of changes to many of the trades being performed. These changes could not be incorporated into any work plan, which decreased Fisk's productivity and more than doubled the base contract value. The numerous changes required Fisk to conduct piecemeal work on a service call basis, instead of being able to conduct its work in a systematic and orderly fashion. Fisk's work was also impacted by the unavailability of work areas because of late completion of other projects, late completion of precedent construction activities, late availability of permanent power, design errors and omissions, and untimely, unresponsive or inadequate responses to Requests for Information. Fisk also incurred additional costs because it was required to maintain critical airside temporary maintenance of air traffic lighting. These issues increased Fisk's costs for labor, labor benefits, on-site supervision, on-site project management, construction support equipment and other on-site general conditions. In

---

[2] A payment bond is "[a] bond given by a surety to cover any amounts that, because of the general contractor's default, are not paid to a subcontractor or materialman." Blacks Law Dictionary 171 (Bryan A. Garner ed., 3d ed. 1999). The bond "'assures the owner a lien-free project, and it induces suppliers and subcontractors to accept work on the project, perhaps at a lower price, because of the assurance that they will be paid.'" Id. (quoting Grant S. Nelson, Real Estate Finance Law § 12.2, at 881 (3d ed. 1994).

2006, Kiewit, POJV and Miami-Dade entered into the first Global Settlement Agreement and entered into a final settlement agreement in 2008. Fisk did not receive any proceeds from the settlement. Fisk last performed work under its subcontract on November 25, 2007.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (*overruled on other grounds by* Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959-60 (2007) (citation omitted)).

## III. ANALYSIS

### A. Travelers' Motion to Dismiss

#### 1. Florida's Little Miller Act

Florida's Little Miller Act, § 255.05, Florida Statutes, requires any person entering into a contract with the county for the construction of a public building or completion of a public work to

3

execute and deliver to the public owner a payment and performance bond prior to commencing work. The bond is conditioned on the contractor's performance of the work in the time and manner provided by the contract and upon promptly making payments to covered persons who provide labor, services, or materials for the work. § 255.05(1)(a), Fla. Stat (2007). A claimant has a right of action against the contractor and the surety for the amounts due. Id. Florida's Little Miller Act is similar to the federal Miller Act, which also requires the execution and delivery of performance and payment bonds before any contract for construction or repair of a public work or building is awarded. 40 U.S.C. § 3131.

Travelers contends that the Complaint should be dismissed because Fisk seeks delay damages that are not recoverable under the Kiewit Payment Bond. However, "[s]urety liability for out-of-pocket costs of delay is consistent with both the language and the purpose of the Miller Act." United States f/u/b/o/ Pertun Const. Co. v. Harvesters Group, Inc., 918 F.2d 915, 918 (11th Cir. 1990) (interpreting the federal Miller Act); Delduca v. U.S. Fid. & Guar. Co., 357 F.2d 204, 208 (5th Cir. 1966) (stating that Florida applies a similar construction to § 255.05, Fla. Stat., as is applied to the federal Miller Act). Only by allowing a full recovery of [labor and material] costs, including those portions caused by delay, can the purpose of the statute - to afford a subcontractor the financial protection of an action against the surety - be achieved." Pertun, 918 F.2d at 918. To deny such out-of-pocket expenses caused by delay would limit a subcontractor to a breach of contract remedy, the inadequacy of which prompted the enactment of Miller Act legislation. Id.; United States f/u/b/o/ Mariana v. Piracci Const. Co., Inc., 205 F. Supp. 904, 906-07 (D.D.C. 1975).

While it does not appear that the Kiewit Payment Bond was covered by Florida's Little Miller Act, the rationale relied upon by courts in finding that a subcontractor may recovery out-of-

pocket costs of delay in Miller Act cases is nevertheless pertinent to non-Miller Act surety payment bonds containing similar language. Although the objectives that Congress and the Florida legislature sought to achieve in passing the Miller and Little Miller Acts may not be pertinent to a surety payment bond not covered by these statutes, ultimately it is the language of a payment bond that governs its interpretation. Where the language of a payment bond not covered by the Miller or Little Miller Acts is similar to the language of a payment bond not covered by these acts, the same interpretation is warranted, without respect to whether or not the payment bond was statutorily mandated. To find otherwise would accord different interpretations to surety payment bonds containing identical language, based solely on compliance with a statutory requirement.

A subcontractor's ability to recover out-of-pocket costs due to delay under a Miller Act payment bond arises directly from the surety payment bond's language providing that the bond remains in effect until the parties providing the labor and material necessary for carrying out the work have been paid. *See* Pertun, 918 F.2d at 918. Thus, a claimant's ability to recover out-of-pocket costs due to delay is not attributable to any particular language concerning the scope of a surety payment bond's coverage, beyond its provision providing for the payment of labor and materials supplied by covered claimants. The Kiewit Payment Bond states that bond is in effect until "all claimants . . . supplying Principal with labor, material, or supplies used directly or indirectly by Principal in the prosecution of the work provided in the Contract" have been paid. Def.'s Mot. to Dismiss, at 4. This language is similar to the language used in payment bonds covered by the Miller and Little Miller Acts. Therefore, Fisk may recover out-of-pocket expenses due to delay under the Kiewet Payment Bond. Here, Fisk seeks recovery for various costs, including labor, labor benefits, on-site supervision, on-site project management, construction support equipment, maintenance of

5

critical airside temporary air traffic lighting, and other on-site general conditions. These expenses are out-of-pocket costs due to delay that Fisk may be entitled to recover from Travelers under the Kiewit Payment Bond. Therefore, Fisk's Complaint states a claim upon which relief may be granted.

B. Travelers' Motion to Strike

Travelers also asserts that Count III should be dismissed "because it is redundant [to Count I] and immaterial because it essentially restates the breach of contract allegation stated in Count I." Def.'s Mot. to Dismiss, at 6 (dkt # 8). A claim by a subcontractor for payment under a surety payment bond is distinguishable from a breach of contract claim, given that a surety payment bond creates rights and obligations independent of the underlying agreement for which the bond ensures payment. Here, Count I is styled as "Claim Against the Kiewit Payment Bond for Breach of Contract." Compl. at 7. This claim is actually a claim for payment under the Kiewit Payment Bond, not a true breach of contract claim for Kiewit's breach of the subcontract. Kiewit's alleged breach of the subcontract is merely the reason Fisk provides for entitlement to payment under the Kiewit Payment Bond. Count III is styled as "Claim Against The Kiewit Payment Bond For Cardinal Change/Contract Abandonment." Id. at 9. Again, this is simply a claim for payment under the Kiewit Payment Bond, not a true claim for cardinal change or contract abandonment. Cardinal change and contract abandonment are merely the reasons Fisk provides for entitlement to payment under the Kiewit Payment Bond.

While Counts I and III both seek the same relief and do not necessarily plead alternate theories of liability, the facts provided in these counts concerning Fisk's entitlement to payment under the Kiewit Payment Bond assist in supplying the material elements necessary to sustain recovery under some legal theory. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006)

6

(stating that notice pleading requires that a complaint contain allegations of each material element necessary to sustain recovery under some viable legal theory). Accordingly, Count III is not redundant to Count I and need not be dismissed or stricken.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Travelers Casualty and Surety Company's Motion to Dismiss Plaintiff's Complaint and Motion to Dismiss or Strike Count III (dkt # 8) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 23rd day of January, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record